UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JONATHON MARK,

        Plaintiff,

v.                               Case No. 22-cv-493-pp

VICKI SABEL-GARVEY,
JOSEPH STRANO,
and ANGELA KEENER,

        Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT**

On April 22, 2022, the plaintiff—who is representing himself—filed a complaint alleging that the defendants retaliated against him for exercising his First Amendment rights. Dkt. No. 1. The plaintiff also has filed a motion for leave to proceed without prepaying the filing fee. Dkt. No. 2. This order grants that motion and "screens" the plaintiff's complaint.

**I.    Motion to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

To decide whether to allow the plaintiff to proceed without prepaying the filing fee, the court first must decide whether the plaintiff can pay the fee; if not, it must determine whether the lawsuit is frivolous, malicious, or fails to state a claim upon which relief can be granted. 28 U.S.C. §§1915(a) and 1915(e)(2)(B)(i).

1

The plaintiff says he is employed, has never been married and has no dependents. Dkt. No. 2 at 1. His hours change week to week, but he makes $11 per hour and works about thirty hours per week. Id. at 2. The court estimates that he makes $330 each week in gross income from his hourly job, or $1,430 per month. The plaintiff lists his employer as Chris Ingels and provides an address. Id. The plaintiff also says that since November 2021, he has made about $2,500 total working for Quality Cab. Id. This equates to roughly $416 each month from Quality Cab ($2,500/six months). Thus, the plaintiff makes, on average, $1,847 per month in gross income.

At to the plaintiff's monthly expenses, he estimates that they run between $2,030 and $2,200 ($1,760 rent at Days Inn Motel, $195 cell phone bill, $75 for storage). Id. He also says that 20% of every check—which the court calculates to be roughly $370 each month—is garnished. Id. at 3. The court calculates the plaintiff's costs to be closer to $2,500 each month; regardless, his monthly costs are several hundred dollars more than his monthly income.

The court will grant the plaintiff's motion to proceed without prepaying the filing fee. This does not mean that the plaintiff does not owe the filing fee; the Seventh Circuit has held that "every . . . person who proceeds [without prepaying the filing fee]" is "liable for the full fees," because "all [28 U.S.C.] § 1915(a) does for any litigant is excuse the pre-payment of fees." Robbins v. Switzer, 104 F.3d 895, 898 (7th Cir. 1997); see also Rosas v. Roman Catholic Archdiocese of Chi., 748 F. App'x 64, 65 (7th Cir. 2019) ("Under 28 U.S.C.

§ 1915(a), a district court may allow a litigant to proceed 'without prepayment of fees,' but not without *ever* paying fees.").

## II. Screening

In cases where the plaintiff asks to proceed without prepaying the filing fee, the court is required to dismiss the case if it determines that the claims are "frivolous or malicious," fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915(e)(2). To state a claim under the federal notice pleading system, a plaintiff must provide a "short and plain statement of the claim" showing that he is entitled to relief. Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead every fact supporting his claims; he needs only to give the defendants fair notice of the claim and the grounds upon which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). At the same time, the allegations "must be enough to raise a right to relief above the speculative level." Id. The court must liberally construe the allegations of a self-represented person's complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by

3

plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

A.  Allegations

The plaintiff has sued three current or former employees of the "Department of Community Corrections." Dkt. No. 1 at 1-3. He says that defendant Vicki Sabel-Garvey is the regional chief, while defendant Joseph Strano is a supervisor and defendant Angela Keener is a probation agent. Id. at 1-2.

It appears that at some point in the past, the plaintiff worked for a company called Hometown Transportation, LLC. Dkt. No. 1 at 3. The plaintiff alleges that on September 15, 2021, someone named Tony Cupertino reported (the plaintiff does not say to whom) that the plaintiff had threatened Cupertino and other Hometown employees via text messages. Id. The plaintiff asserts that Cupertino provided the text messages to the police, and "it was found that Mr. Cupertino's allegations were 'false.'" Id. The plaintiff says that the "false info was used against plaintiff to confine him for one (1) week." Id. The plaintiff then alleges:

> Said info was also used in complaints to Mr. Cupertino and/or Richie Cupertino about serious concerns going on within Hometown, which violated the law, and dealt with public concerns. This speech was also used in a formal complaint to the DWD about these issues.

Id. It appears that the plaintiff is saying that he expressed concerns to Tony and Richie Cupertino and to the Department of Workforce Development about activity—perhaps illegal activity—he believed was occurring at Hometown.

The plaintiff alleges that "Ms. Sabel-Garvey violated plaintiff's First Amend. right to Freedom of Speech/expression by using his protected speech against him in order to confine him." Id. at 4. He makes the same allegations against defendants Joseph Strano and Angela Keener. Id. at 4. The plaintiff further alleges that Sabel-Garvey, Strano and Keener conspired with each other to "violat[e] his First Amendment and retaliated against plaintiff for his speech" regarding the plaintiff's complaints to his supervisors. Id. He says that the conspiracy occurred between September 15 and 23, 2021, and included a "meeting of the minds on 9-15-21 to 9-16-21," which led to his confinement from September 16 to September 23, 2021. Id.

The plaintiff seeks nominal, compensatory and punitive damages, unspecified injunctive relief and declaratory relief. Id. at 4.

B.  Analysis

   1.  *First Amendment Retaliation*

To state a claim for retaliation under the First Amendment, the plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the protected activity caused the deprivation." Cobian v. McLaughlin, 717 F. App'x 605, 612 (7th Cir. 2017) (citing Watkins v. Kasper, 599 F.3d 791, 794 (7th Cir. 2010)) (citation omitted). The plaintiff has alleged

that he engaged in activity protected by the First Amendment—he complained about activity at his former company to his supervisors and to the Department of Workforce Development (presumably the defendants found out about his complaints/texts when Cupertino reported them to the police). He has alleged that he suffered a deprivation that would likely deter First Amendment activity in the future—he alleges he was "confined" for a week. Finally, he has alleged that his exercise of his First Amendment speech was what caused him to be confined. What is unclear is whether the text messages to Cupertino and others, and his complaints to the Department of Workforce Development, constituted protected speech under the First Amendment.

The complaint does not reveal the content of the texts. The plaintiff says the complaints were "about activity that violated several laws within Hometown," dkt. no. 1 at 4, but does not explain what that activity was or what he said about the activity. The plaintiff states that Cupertino reported the texts the plaintiff sent to him as "threats." Id. at 1.

Not all speech is protected by the First Amendment. "'[T]he First Amendment does not preclude restrictions on certain categories of speech having little or no social value.'" Maier v. Smith, 912 F.3d 1064, 1071 (7th Cir. 2019) (quoting United States v. Parr, 545 F.3d 491, 496-97 (7th Cir. 2008)). One of these categories is "true threats." Id. "'A statement qualifies as a true threat . . . if it is a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals.'" Id. (citing Parr, 545

6

F.3d at 497)) (quotation marks omitted). If the plaintiff had threatened someone, that speech would not have been protected by the First Amendment.

The plaintiff says, however, that Cupertino's allegations that the plaintiff had threatened him turned out to be false. At this very early stage, and construing the plaintiff's claims liberally as the court must in the case of a self-represented plaintiff, the court concludes that the plaintiff has—just barely—stated a claim that the plaintiffs retaliated against him in violation of the First Amendment.

### III. Conclusion

The court **GRANTS** the plaintiff's amended motion for leave to proceed without prepaying the filing fee. Dkt. No. 6.

The court **ORDERS** that the United States Marshal must serve a copy of the complaint and this order on the defendants under Fed. R. Civ. P. 4. The court advises the plaintiff that Congress requires the U.S. Marshals Service to charge for making or attempting service. 28 U.S.C. § 1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). Although Congress requires the court to order service by the U.S. Marshals Service precisely because indigent plaintiffs do not have the funds to pay filing fees, it has not made any provision for these service fees to be waived by either the court of the U.S. Marshals Service.

7

The court **ORDERS** that the defendants must answer or otherwise respond to the complaint within the time allowed by the Federal Rules of Civil Procedure.

Dated in Milwaukee, Wisconsin this 26th day of September, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**